UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Robert Scott Kirkham, Jr.,

                Plaintiff,

v.                                                   6:14-CV-0711
                                                    (GTS)
Comm'r of Soc. Sec.,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                  HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
One Park Place
300 South State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.        HEETANO SHAMSOONDAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Robert Scott Kirkham, Jr. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on January 29, 1982. He completed education through the tenth grade. Plaintiff's employment history consists of jobs as a cleaner/janitor, cashier and saw machine operator. Generally, Plaintiff's alleged disability consists of Crohn's disease, tremors, borderline intellectual functioning, and lumbar spondylolisthesis. Plaintiff's alleged disability onset date is December 1, 2009 and his date last insured is December 31, 2012.

### B. Procedural History

On May 24, 2011, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 19, 2012, Plaintiff appeared by video before the ALJ, Gregory Hamel. (T. 34-75.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on November 2, 2012. (T. 16-33.) On April 18, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 21-28.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (T. 21.) Second, the ALJ found that Plaintiff's Crohn's disease, borderline intellectual functioning, and lumbar spondylolisthesis are severe impairments. (T. 21-22.) Third, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P,

Appendix. 1. (T. 22-23.) The ALJ considered Listings 1.04, 5.06, and 12.05. (*Id*.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[1] except that can only occasionally climb stairs, and can occasionally balance, stoop, kneel, crouch or crawl; he cannot climb ladders, ropes or scaffolds; he must avoid hazards; he can do tasks requiring frequent but not constant fingering and grasping; and he is limited to the performance of routine and repetitive tasks. (T. 24-27.) Fifth, and finally, the ALJ determined that Plaintiff is capable of performing past relevant work as a cleaner. Alternatively, the ALJ determined, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 27-28.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because (a) he failed to comply with the regulations in evaluating the opinion of Plaintiff's treating physician, Dr. Tallandini, and (b) he failed to reconcile the opinion provided by Dr. Rosenfeld with his RFC determination. (Dkt. No. 11 at 10-14 [Pl.'s Mem. of

---

[1] According to the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

3

Law].)  Second, Plaintiff argues that the ALJ's credibility findings are unsupported by substantial evidence because the ALJ erred in considering the required factors when assessing Plaintiff's credibility.  (*Id.* at 15-16.)  Third, and finally, Plaintiff argues that the ALJ's findings at step four and five of the sequential analysis are not supported by substantial evidence.  (*Id.* at 16-18.)

### B. Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues that the ALJ's RFC finding is supported by substantial evidence.  (Dkt. No. 12 at 6-13 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ's credibility finding is supported by substantial evidence.  (*Id.* at 13-17.)  Third, and finally, Defendant argues that substantial evidence support's the ALJ's determinations at steps four and five of the sequential analysis.  (*Id.* at 17-18.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen*

*v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

### IV.     ANALYSIS

#### A.     **Whether the ALJ Erred in Weighing the Medical Opinions of Record**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 6-13 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ erred in weighing the opinions of his treating physicians, Dr. Nicoletta Tallandini, M.D., and Dr. Michael Rosenfeld, M.D. Defendant counters that the ALJ's determination is supported by substantial evidence.

The ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). The opinion of a treating physician is entitled to controlling weight when (1) the opinion is well

supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's

opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

Here, the record contains a medical source statement from Dr. Tallandini, Plaintiff's treating family practice physician. (T. 498-500.) According to Dr. Tallandini, she has been treating Plaintiff as needed since 1998. While Plaintiff testified that he sees Dr. Tallandini every three months (T. 47) the record only contains treatment records for visits on February 17, 2012 and July 26, 2012 (T. 411-412, 438-439). Dr. Tallandini opines that Plaintiff can sit and stand for a total of four hours each in an eight-hour workday, but can sit or stand for only thirty minutes at a time and will need to shift positions at will and take unscheduled breaks during the day. Dr. Tallandini further opines that Plaintiff will be off task at least twenty percent of the day and will be absent more than four days per month.

The ALJ assigned limited weight to Dr. Tallandini's opinion because it is "inconsistent with [Plaintiff's] normal physical examinations and good response to treatment" and because it is "not supported by [Plaintiff's] own description of his activities." (T. 26.) Plaintiff argues that the ALJ's reasoning is flawed because he failed to give consideration to the longevity of treatment when determining the weight to assign. However, the length, nature and extent of the treating relationship is only one factor that the ALJ must consider when determining the weight to apply to an opinion of a treating physician. In addition, the ALJ must consider whether there is other evidence in support of the opinion, its consistency with the record as a whole, and whether the opinion is from a specialist. Here, the ALJ noted that despite the length of Plaintiff's treatment relationship with Dr. Tallandini, he was assigning the doctor's opinion limited weight because it is inconsistent with other medical evidence and the record as a whole.

8

For example, Plaintiff's treating gastroenterologist, Dr. Rosenfeld, reported in June of 2010, shortly after Plaintiff was diagnosed with Crohn's disease, that Plaintiff "is doing well[,]" is having two to three loose to formed bowel movements per day with no bleeding or fever, and that his abdomen is nontender. (T. 324.) Three months later, Dr. Rosenfeld reported that Plaintiff "is feeling well[, ] . . . has two to three bowel movements per day which appear to be formed[, with] [n]o bleeding, abdominal pain or fever" and that "[h]is exam is within normal limits." (T. 323.) Dr. Rosenfeld's treatment note from December of 2010 reveals that Plaintiff has "3-4 bowel movements per day no (sic) bleeding" and that he "[c]omplains of some upper to mild abdominal pain intermittently followed by loose bowel movement." (T. 320.) Dr. Rosenfeld continually recorded that Plaintiff experiences no side effects from medication and that Plaintiff reports "associated decreased appetite, diarrhea and fatigue, but denies associated constipation, fever, perirectal tenderness, rectal bleeding, vomiting, weakness or weight loss." (*Id*.) Finally, Dr. Rosenfeld noted that Plaintiff denies musculoskeletal or psychiatric symptoms. (*Id*.) In January of 2011, Dr. Rosenfeld's notes include the same reports as well as reports of normal abdominal, musculoskeletal and neurological examinations. (*Id*., 318.) In September of 2011, Plaintiff presented to Dr. Rosenfeld with reports of diarrhea for the prior month with black stools and sometimes severe pain as well as intermittent fever. (T. 315.) However, Dr. Rosenfeld recorded normal abdominal and musculoskeletal exams. (*Id*.) Further, a September 16, 2011 abdominal CT revealed, among other things, a "[t]hickened wall of distal small bowel[,]" but an "[o]therwise unremarkable CT of the abdomen and pelvis." (T. 400.) A few weeks later, Dr. Rosenfeld reported "no acute CT findings" and that Plaintiff "feels better, no fever." (T. 391.) Once again, Dr. Rosenfeld reported normal findings on abdominal exam. (*Id*.)

9

Dr. Rosenfeld continued to report normal abdominal and musculoskeletal examination findings (T. 374-390) despite one report by Plaintiff of rectal bleeding (T. 387). Dr. Rosenfeld performed a colonoscopy and in October of 2011 and in July of 2012. In October of 2011, he reported "aphthous ulcers and some hyperemia of mucoma of rectum" with "no significant pathological changes." (T. 403-404.) By July of 2012, Dr. Rosenfeld reported "colitis of terminal ileum, ileocecal area and just above rectosigmoid and left colon sigmoid" with "no evidence of active inflammation." (T. 401-402.)

Plaintiff was also treated by cardiologist Apparao Poonati, M.D., at least three times between April of 2010 and June of 2012. Each exam revealed normal abdominal, neurological, psychiatric and musculoskeletal findings. (T. 223-225, 415, 446-447.) An April 12, 2010 stress test revealed that Plaintiff has "good exercise capacity" and was "negative for exercise induced ischemia." (T. 222.) An echocardiogram of the same day was normal. (T. 226.) A stress test in November of 2011 revealed that Plaintiff has moderate exercise capacity and "no exercise induced cardiac arr[h]ythmias." (T. 450.)

An August 15, 2011 MRI of Plaintiff's lumbar spine revealed a minor bulging disc at T11-T12 and mild spondylolisthesis of L5 on S1 along with bilateral spondylolysis defects with a mild bulging disc at that level. (T. 257.) On August 22, 2011, Plaintiff underwent an internal medical examination by consultative examiner, Kalyani Ganesh, M.D. Dr. Ganesh noted that Plaintiff has a normal gait, can walk on heels and toes without difficulty, needed no help changing for the exam or getting on or off the examination table and is able to rise from a chair without difficulty, although he cannot squat in full. (T. 268.) Plaintiff's abdominal exam is generally normal except Dr. Ganesh noted some tenderness in the upper right and lower left

quadrants. (T. 269.) Dr. Ganesh also noted a normal musculoskeletal, neurologic and fine motor exam. (*Id*.) According to Dr. Ganesh, Plaintiff has no gross physical limitation to sitting, standing, walking and the use of upper extremities. (T. 270.)

Finally, consultative examiner, Dennis M. Noia, Ph.D., diagnosed Plaintiff with borderline intellectual functioning after an examination on August 22, 2011. (T. 263.) Dr. Noia noted that Plaintiff's attention and concentration is good and that, based on standardized intelligence testing, Plaintiff's reading, writing and arithmetic is at somewhat below an age appropriate level. (T. 262-265.) Dr. Noia further noted Plaintiff reports that he is able to dress, bathe and groom himself and that he can cook and prepare food, do laundry, shopping, manage money and drive, but that he does not use public transportation and does not do general cleaning because of pain. (T. 265.) Dr. Noia opines that Plaintiff is capable of understanding simple instructions and directions, performing simple and some complex tasks with supervision and independently, maintaining attention and concentration for tasks, regularly attending to a routine and maintaining a schedule, learning new tasks, making appropriate decisions, dealing with stress and relating to and interacting moderately well with others. (T. 265.)

In addition, the Court notes, Dr. Tallandini's opinion is not supported by her limited treatment notes contained in the record. For example, on February 17, 2012, Dr. Tallandini cleared Plaintiff for gallbladder surgery, pending an EKG and laboratory test results, noting "generalized chronic discomfort" with "diarrhea and some fatigue" but a "soft, nontender" abdomen and further noted that neurologically, Plaintiff was "grossly intact." (T. 438-439.) Also, on July 26, 2012, upon discharge from the hospital after Plaintiff presented to the emergency room one day prior with increased nausea, vomiting and abdominal pain, Dr.

11

Tallandini noted Plaintiff "felt a lot better" after medications, was able to tolerate food, had no further nausea and minimal pain. (T. 411.) On exam, Dr. Tallandini noted that Plaintiff's tremor was better with medication and that he had loose bowel movements the day prior but no noticeable gastrointestinal bleeding. (*Id*.) Further, Dr. Tallandini reported that Plaintiff's abdomen was "obese and nontender" with "minimal discomfort on palpation of the right lower quadrant," and that his abdominal CT showed "[n]o obvious abnormality . . . in view of infection, no evidence of colitis or diverticulitis[, and n]o abscess" and that "[t]he rest of his CT is normal." (T. 412.)

There is nothing in Dr. Tallandini's treatment notes, or the other medical evidence of record, to support her restrictive opinion of Plaintiff's limitations. Plaintiff's musculoskeletal exams were generally normal, yet Dr. Tallandini opines that he can sit or stand for only thirty minutes at a time and will need to shift positions at will. Dr. Tallandini's opinion that Plaintiff will need to take unscheduled breaks during the day, will be off task at least twenty percent of the day and will be absent more than four days per month is equally unsupported given Plaintiff's normal abdominal, neurological and psychiatric examinations. Further, Plaintiff's argument that Dr. Tallandini's opinion is consistent with Plaintiff's eight hospital visits between 2010 and 2012 is not valid for two reasons. First, Plaintiff's citations to the record reflect six, not eight, hospital visits within a three-year period, only five of which were related to Plaintiff's severe impairment. Second, five visits to the emergency room, only one of which required an admission and one-day hospital stay, does not support Dr. Tallandini's opinion that Plaintiff will be absent more than four times per month. Therefore, the ALJ's decision to assign limited weight to Dr. Tallandini's opinion is supported by substantial evidence.

12

The record also contains a medical source statement from Dr. Rosenfeld, Plaintiff's treating gastroenterologist. (T. 483-486.) According to Dr. Rosenfeld, Plaintiff has mild Crohn's disease with a good prognosis. Dr. Rosenfeld opines that Plaintiff can frequently lift ten pounds, stand for a total of six hours an eight-hour workday and can sit or stand for more than two hours at a time. Further, Dr. Rosenfeld opines that Plaintiff will not need to shift positions at will but will need ready access to a restroom and will sometimes need to take unscheduled breaks during the day. Finally, Dr. Rosenfeld opines that Plaintiff will be off task between five to ten percent of the day and will be absent about four days per month.

The ALJ assigned great weight to Dr. Rosenfeld's opinion except for the need for unscheduled breaks and the lifting requirements because it is "consistent with [Plaintiff's] own description of his activities as well as his normal physical examinations" and "[t]here is limited evidence supporting the lifting requirement or need for unscheduled breaks." (T. 26.) Plaintiff argues that the ALJ erred by failing to reconcile his RFC determination with Dr. Rosenfeld's opinion that he will need unscheduled breaks and can only lift ten pounds. However, Dr. Rosenfeld's opinions in this regard are contradicted by his own treatment notes as well as other medical evidence in the record.

For example, as previously indicated in this Decision and Order, Dr. Rosenfeld continually recorded Plaintiff's normal musculoskeletal exam findings, as did Dr. Poonati. Consultative examiner, Dr. Ganesh also recorded normal musculoskeletal findings after his examination of Plaintiff. In addition, Plaintiff's spinal MRI revealed only mild spondylolisthesis with a mild bulging disc and his most recent stress test revealed that he has moderate exercise capacity. Further, Dr. Rosenfeld generally recorded normal abdominal examination findings, as

did Dr. Poonati, and Dr. Ganesh's examination revealed a generally normal abdominal exam. All of this evidence is contrary to Dr. Rosenfeld's opinion that Plaintiff can only lift ten pounds, would need unscheduled breaks throughout the day and would be off task five to ten percent of the workday. Therefore, the ALJ's determination that Dr. Rosenfeld's opinion in these regards is not entitled to great weight is supported by substantial evidence.

Consequently, the ALJ did not err in weighing the medical opinions of record and his physical RFC determination is supported by substantial evidence.

**B.     Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 13-17 [Def.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically

determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Here, the ALJ considered Plaintiff's allegations regarding his impairments and functional limitations during the application process and his hearing and found that his medically determinable impairments could reasonably be expected to cause his alleged symptoms but that his statements regarding the intensity, persistence and limiting effects of his symptoms are not credible. (T. 25.) Specifically, the ALJ cited Plaintiff's poor work history, even during times where disability was not alleged, and Plaintiff's continual use of cigarettes despite medical advice to the contrary. (T. 25-26.) In addition, the ALJ considered that Plaintiff's testimony regarding his hand tremors is contradicted by the medical evidence and his reported daily activities. (T. 26.) Finally, the ALJ noted that Plaintiff had no ongoing mental health treatment despite his mental impairment. (*Id.*)

Plaintiff argues that the ALJ erred in finding him less than credible based on the ALJ's (1) finding that Plaintiff's daily activities suggest that his tremors do not cause as many

15

limitations as he alleged and (2) faulting Plaintiff for his failure to seek mental health treatment.

Here, the ALJ considered Plaintiff's daily activities, his symptoms and his medications in addition to the objective medical evidence to determine that he is not credible. While Plaintiff argues that his daily activities do not necessarily contradict the allegations of disabling symptoms, the objective medical evidence indicates that Plaintiff has denied having a tremor (T. 234) and had intact finger dexterity and full grip strength (T. 269). Moreover, Plaintiff's neurological exams were generally normal. In addition, Plaintiff's argument that it is a questionable practice to fault a person for failing to pursue treatment when he has a mental impairment relies on caselaw that is readily distinguishable. The case relied on by Plaintiff deals with an underlying mental impairment, which caused delusions, anxiety, depression, poor insight and judgment. *See McGregor v. Comm'r of Soc. Sec.*, 993 F. Supp. 2d 130, 143 (N.D.N.Y. 2012). Here, Plaintiff has been diagnosed with borderline intellectual functioning. (T. 265.) Consultative examining psychologist, Dr. Noia, has found that Plaintiff is capable of understanding simple instructions and directions, performing simple and some complex tasks with supervision and independently, maintaining attention and concentration for tasks, regularly attend to a routine and maintain a schedule, learning new tasks, making appropriate decisions, dealing with stress and relating to and interacting moderately well with others. (T. 265.) Consequently, the medical evidence does not support the conclusion that Plaintiff was incapable of obtaining treatment for his mental impairment.

In any event, even assuming Plaintiff's arguments have merit, the ALJ's credibility assessment was not erroneous because, for the reasons discussed in Point IV.A. of this Decision and Order, the medical evidence does not support Plaintiff's assertions of symptoms and limitations.

For these reasons, the ALJ's credibility determination is supported by substantial evidence.

### C. Whether the ALJ Erred at Steps Four and Five of the Sequential Analysis

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 17-18 [Def.'s Mem. of Law]). The Court would only add the following analysis.

As explained in Parts IV.A.-B. of this Decision and Order, the ALJ's RFC determination is supported by substantial evidence. Accordingly, the ALJ's determinations at steps four and five of the sequential analysis are based on substantial evidence because they are made in reliance on the opinion of a vocational expert, who rendered her opinion based on a hypothetical that is supported by substantial evidence. Therefore, the ALJ's determination at steps four and five of the sequential analysis is likewise based on substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 3, 2015
 Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge